UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALAN C. WOOD,

          Petitioner,                         Case No. 4:18-cv-12673
                                            Hon. Matthew F. Leitman

v.

NOAH NAGY,

          Respondent.

_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 1), (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner Alan C. Wood is a state prisoner in the custody of the Michigan Department of Corrections. On January 17, 2013, a jury in the Oakland County Circuit Court convicted Wood of first-degree murder and several lesser offenses. The state trial court then sentenced Wood to a mandatory life sentence on the murder conviction and lesser terms for the other offenses.

On August 27, 2018, Wood filed a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. (*See* Pet., ECF No. 1.) The petition raises twenty claims. The Court has carefully reviewed those claims, and for the reasons explained below, it concludes that none of them merit federal habeas relief. The Court therefore **DENIES** the petition.

# I

The charges against Wood arose from the robbery-murder of an elderly woman in her home.   At Wood's jury trial, Tonia Watson, a woman with whom Wood lived, testified that during the period preceding the murder, she and Wood were homeless and living out of motels as they struggled to obtain money for food and drugs. Watson testified that she and Wood had committed a series of thefts prior to the instant offense to support their drug habits.

Wood and Watson met the eighty-year-old victim, Nancy Dailey, in November of 2011, when Dailey paid them $40 to rake leaves in her yard. According to Watson, the two decided to rob Dailey on November 20, 2011, after they checked out of a motel because they were out of money.

That night they broke into Dailey's house. Watson testified that Wood brutally beat Dailey while Watson gathered some of her valuables. During the robbery, Watson saw Wood drag Dailey into her bedroom while holding a knife. After he emerged, he told Watson that he had never slit someone's throat before. Dailey's body was found in her house days later with her throat slashed.

Watson then testified that after she and Wood left Dailey's home, they attempted to use Dailey's credit cards.  Watson also described their movements and where they disposed of Daily's property. With Watson's assistance, police officers were able to recover the items described by Watson and find other evidence

corroborating her account. Among the items recovered was a knife that Watson said Wood had attempted to conceal in the median of a local highway. Watson believed that the knife was the murder weapon.

Several of Dailey's neighbors also testified at trial.  One neighbor testified that she saw Wood raking Daily's leaves earlier in November.  A second neighbor testified that, on the night of the murder, she saw an unfamiliar man walking past Dailey's house wearing a dark hooded sweatshirt and dark pants.  Watson confirmed that Wood was wearing clothes consistent with that description on the night of the murder.  Finally, a third neighbor testified that he saw Wood in an alley near Dailey's house on the evening of the murder.

In addition, the prosecutor introduced Y-STR DNA evidence.  That evidence showed that Y-STR DNA taken from under Dailey's fingernails and on her scarf had the same haplotype as Wood's DNA. A haplotype match is too broad to identify a particular individual, but the prosecutor's expert testified at trial that only 1 in 1,923 Caucasian males shared that haplotype.

The prosecutor also offered other-acts evidence to show Wood's common plan or scheme of stealing from homes in which he worked. For example, Wood's former landlady testified that Wood stole her purse in October of 2011. Further testimony was presented indicating that when Wood worked in the home of two disabled women in October of 2010, he stole from them. Finally, evidence was

offered to show that Wood stole marijuana, knives, and a gun from another home in which he worked in September of 2011.[1]  The jury ultimately convicted Wood of first-degree murder and several lesser charges.

Following sentencing, Wood filed a claim of appeal in the Michigan Court of Appeals. His first appointed appellate attorney filed a brief on appeal that raised what now form Wood's first four habeas claims. Wood moved for the appointment of a second attorney, and that attorney filed a supplemental brief that raised what now form Wood's fifth and sixth habeas claims. Wood also filed his own brief that raised what now form his seventh through tenth habeas claims. The Michigan Court of Appeals rejected all of the claims and affirmed Wood's convictions in a published decision. *See People v. Wood*, 862 N.W.2d 7 (Mich. Ct. App. 2014).  Wood then filed a *pro se* application for leave to appeal in the Michigan Supreme Court, raising the same claims that were raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *See People v. Wood*, 871 N.W.2d 154 (Mich. 2015) (Table).

Wood thereafter returned to the state trial court and filed a motion for relief from judgment.  In that motion, Wood raised what now form his eleventh through twentieth habeas claims. The trial court denied the motion for relief from judgment

---

[1] The Michigan Court of Appeals' opinion affirming Wood's convictions contains a more detailed summary of the strong evidence presented at trial indicating Wood's guilt. *See People v. Wood*, 862 N.W.2d 7, 11-16 (Mich. Ct. App. 2014).

on the basis that Wood had failed to demonstrate "good cause" or "actual prejudice" under Mich. Ct. R. 6.508(D)(3) for failing to have raised the claims on direct review. (*See* State Ct. Order, ECF No. 9-20.)   Wood then filed an application for leave to appeal trial court's decision in the Michigan Court of Appeals. That court denied the application "for failure to establish that the trial court erred in denying the motion for relief from judgment." (ECF No. 9-21.)   Wood applied for leave to appeal that decision in the Michigan Supreme Court, but that court denied relief with a citation to Michigan Court Rule 6.508(D). *See People v. Wood*, 915 N.W.2d 364 (Mich. 2018) (Table).

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## III

## A

Several of Wood's claims arise out of the state trial court's alleged erroneous admission of evidence under state law.  More specifically, Wood argues that the trial court erroneously admitted:

- The Y-STR DNA evidence (habeas claims one and four);
- "Other acts" evidence under Michigan Rule of Evidence 404(b) (habeas claim two);
- Lay testimony from a police officer under Michigan Rule of Evidence 701 that the knife found partially stuck into a highway median was the murder weapon (habeas claim seven); and
- Certain evidence that lacked a sufficient chain of custody (habeas claim nine).

Each of these claims raise questions of state law, and none are cognizable on federal habeas review.  Simply put, "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  Thus, because Wood challenges the admission of this evidence under Michigan law, he is not entitled to federal habeas relief on these claims.  Nor has Wood shown that that the trial court's evidentiary rulings were "so egregious" that they violated his federal due process rights and rendered his trial fundamentally

unfair. *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (explaining that only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness" may it violate federal due process rights and warrant federal habeas relief).

For all of these reasons, Wood is not entitled to federal habeas relief on these evidentiary claims because they are not cognizable in this action. *See, e.g., Byrd v. Collins,* 209 F.3d 486, 528 (6th Cir. 2000) (citing *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules.")).

**B**

Wood next claims that the prosecutor committed misconduct when the prosecutor allegedly vouched for the credibility of Watson during the prosecutor's opening statement. Wood raised this claim on direct review, and the Michigan Court of Appeals rejected it:

> Defendant next argues that the prosecutor engaged in misconduct in her opening statement by vouching for the credibility of Watson and that the trial court erred by not granting his motion for a mistrial. We disagree. This Court "review[s] claims of prosecutorial misconduct case by case ... to determine whether the defendant received a fair and impartial trial." *People v. Watson,* 245 Mich.App. 572, 586, 629 N.W.2d 411 (2001). We review for an abuse of discretion a trial court's decision regarding a motion for a mistrial. *People v. Schaw,* 288 Mich.App. 231, 236, 791 N.W.2d 743 (2010).

A prosecutor may not vouch for the credibility of his or her witnesses "to the effect that [the prosecutor] has some special knowledge concerning a witness'[s] truthfulness." *People v. Bahoda,* 448 Mich. 261, 276, 531 N.W.2d 659 (1995). However, merely " '[b]y calling a witness who testifies pursuant to an agreement requiring him to testify truthfully, the Government does not insinuate possession of information not heard by the jury and the prosecutor cannot be taken as having expressed his personal opinion on a witness'[s] veracity.' " *Id.* (citation omitted) (first alteration in original).

During opening statements, the prosecutor addressed Watson's testimony as follows:

> You are also going to hear from Tonia Watson in this case. And I'm sure that the defendant is going to do everything he can to make her look like a liar. So be prepared for that.

> She's going to testify as a witness for the prosecution because aside from Nancy Dailey and the defendant she's the only one that knows what happened in that house that night.

> Now you are going to hear about her role that she played in the crimes that were committed because like I said she was not completely innocent.

> You're going to hear that she's a thief. You're going to hear that her fingerprint was found on a jewelry case, on a jewelry box that was found in Nancy Dailey's bedroom on a dresser.

> You're also going to hear that she was originally charged not with first degree premeditated murder, but she was charged with felony murder for the role that she played in assisting and committing the larceny that was the underlying offense for the felony murder.

She was also charged with larceny in a building and she was also charged with the financial transaction device for the one that she attempted to use that card that we know of.

You're going to hear that as a result of her coming in this court testifying before you and it's conditioned upon the prosecutor believing that she's testifying truthfully she will get a reduced charge. She will be pleading to second degree murder, larceny in a building and financial transaction device. She will serve a minimum—

Defense counsel objected at that point on the ground that the prosecutor's comments constituted improper vouching for the witness. The trial court reinstructed the jury that the opening statements of attorneys were not evidence and that the trial court would provide the jury with the applicable law. Defendant moved for a mistrial on the basis of the prosecutor's comments; the trial court denied the motion.

Our review of the trial court record convinces us that the prosecutor's reference to Watson's plea agreement did not embody an inappropriate "'suggest [ion] that the government had some special knowledge, not known to the jury, that the witness was testifying truthfully.'" *Bahoda,* 448 Mich. at 276, 531 N.W.2d 659 (citation omitted). Further, even if the prosecutor's statements were improper, the trial court's instructions, which emphasized that the prosecutor's opening statement was not evidence and that the jury alone had the responsibility to determine witness credibility, cured any potential prejudice. *People v. Unger,* 278 Mich.App. 210, 235, 749 N.W.2d 272 (2008) (observing that "[c]urative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions") (citations omitted). Therefore, the trial court acted within its discretion by

> denying defendant's motion for a mistrial. *Schaw,* 288
> Mich.App. at 236, 791 N.W.2d 743.

*Wood*, 862 N.W.2d at 19-20.

Wood has not shown that the Michigan Court of Appeals' decision was contrary to, or an unreasonable application of, clearly established federal law. A prosecutor's improper comments violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Here, Wood has not shown that the prosecutor's comments "so infected" his trial as to render it "unfair[]." Nor has Wood shown that the prosecutor's comments were based on "special knowledge" known only to the prosecution. *See United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999) ("[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony") (internal citations omitted).

For all of these reasons, Wood is not entitled to federal habeas relief on this claim.

## C

Wood next asserts his confrontation rights under the Sixth Amendment were violated when the prosecutor offered the preliminary examination testimony of one

10

of its DNA experts, Amy Altesleben, in lieu of live testimony.  Wood raised this

claim on direct review.  The Michigan Court of Appeals rejected it on the grounds

that (1) Altesleben was unavailable due to complications related to her pregnancy

and (2) Wood had a prior opportunity to cross-examine her at the preliminary

examination:

> Defendant next argues that the trial court violated his right
> to confront witnesses against him, as well as MRE
> 804(b)(1), by allowing the admission of Altesleben's
> preliminary examination testimony. Defendant did not
> object to the admission of this evidence; this issue is
> therefore unpreserved and reviewed for plain error
> affecting substantial rights. *People v. Carines,* 460 Mich.
> 750, 763, 774, 597 N.W.2d 130 (1999).
>
> We conclude that the trial court did not err by deeming
> Altesleben unavailable to testify at trial. Further,
> defendant enjoyed a prior, similar opportunity to cross-
> examine Altesleben, and thus the trial court violated
> neither the Confrontation Clauses, U.S. Const., Am. VI
> and Const. 1963, art. 1, § 20, nor MRE 804(b)(1) by
> allowing the reading of Altesleben's preliminary
> examination testimony at trial. Defendant also has not
> established that trial counsel was ineffective for failing to
> object to the reading of Altesleben's prior testimony.
>
> [….]
>
> The prosecutor moved to admit at trial Altesleben's
> preliminary examination testimony on the basis of a
> doctor's order confining her to "bed rest as a result of
> complications associated with her pregnancy...." The court
> found that Altesleben was unavailable and admitted her
> preliminary examination testimony. We conclude that the
> trial court did not err by determining that Altesleben was
> unavailable because of a "then existing physical ... illness

or infirmity." MRE 804(a)(4). *See Garland*, 286 Mich.App. at 7, 777 N.W.2d 732 (holding that "[b]ased on the evidence on the record showing that the victim was experiencing a high-risk pregnancy, that she lived in Virginia, and that she was unable to fly or travel to Michigan to testify, the trial court did not clearly err by determining that the victim was unavailable").

Further, "MRE 804(b)(1) by its language permits testimony from 'the same or a different [prior] proceeding' if the party against whom the testimony is \*518 offered had the opportunity and motive in the prior proceeding 'to develop the testimony by direct, cross, or redirect examination'." *People v. Morris*, 139 Mich.App. 550, 555, 362 N.W.2d 830 (1984) (alteration in original). In this case, defendant had ample opportunity to cross-examine Atlesleben during his and Watson's joint preliminary examination. Atlesleben testified at the preliminary examination on the very charges for which defendant stood trial. Defense counsel for both defendant and Watson cross-examined Atlesleben during the preliminary examination; no indication exists that the district court limited their opportunities to cross-examine Atlesleben, and the trial court admitted both cross-examinations at defendant's jury trial. Consequently, the trial court did not err by admitting the preliminary examination testimony pursuant to MRE 804(b)(1). *See People v. Meredith*, 459 Mich. 62, 66–67, 586 N.W.2d 538 (1998); *Morris*, 139 Mich.App. at 555, 362 N.W.2d 830. For the same reasons, defendant was not denied his right to confront witnesses against him. *See California v. Green*, 399 U.S. 149, 165, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

*Wood*, 862 N.W.2d at 25-26.

Wood has not shown that the Michigan Court of Appeals' decision was contrary to, or an unreasonable application of, clearly established federal law.  Out-of-court statements that are testimonial in nature are barred by the Sixth Amendment

Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable. See *Crawford v. Washington*, 541 U.S. 36 (2004). Where a witness is unavailable, the prosecution must make a "a good-faith effort to obtain [the witness's] presence at trial." *Barber v. Page*, 390 U.S. 719, 724-25 (1968); see also *Hamilton v. Morgan*, 474 F.3d 854, 858 (6th Cir. 2007).

Here, Altesleben was unavailable because she had a doctor's order confining her to bedrest as a result of complications surrounding her pregnancy. In addition, Wood's counsel had the opportunity to, and did in fact, conduct a thorough cross-examination of Altesleben at the preliminary hearing. (*See* ECF No. 9-12, PageID.767-776.)   Under these circumstances, Wood has not shown that the Michigan Court of Appeals unreasonably concluded that the admission of Altesleben's preliminary examination testimony did not violate his rights under the Confrontation Clause.

For all of these reasons, Wood is not entitled to federal habeas relief on this claim.

## D

Wood next claims that the state trial court violated his due process rights when it instructed the jury on what factors to consider in evaluating Watson's testimony.

13

Wood raised this claim on direct review, and the Michigan Court of Appeals rejected

it:

> Next, defendant argues that the trial court improperly bolstered Watson's credibility with an improper jury instruction. We disagree. In the first instance, defendant waived any claim of error regarding the jury instructions when his counsel affirmatively approved the instructions. *People v. Carter,* 462 Mich. 206, 208–209, 215, 612 N.W.2d 144 (2000). Further, the jury instructions were not improper.
>
> "A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v. Rodriguez,* 463 Mich. 466, 472, 620 N.W.2d 13 (2000) (quotation marks and citation omitted). This Court reviews jury instructions as a whole to determine whether error requiring reversal occurred. *People v. Bartlett,* 231 Mich.App. 139, 143, 585 N.W.2d 341 (1998). The jury instructions must include all elements of the charged offenses, and must not omit material issues, defenses, or theories that the evidence supports. *Id.* Even when somewhat imperfect, jury instructions do not qualify as erroneous provided that they fairly present to the jury the issues to be tried and sufficiently protect the defendant's rights. *People v. Knapp,* 244 Mich.App. 361, 376, 624 N.W.2d 227 (2001); *Bartlett,* 231 Mich.App. at 143–144, 585 N.W.2d 341.
>
> Watson testified that on November 20, 2011, she and defendant returned to Dailey's house after defendant had proposed robbing Dailey; she and defendant entered Dailey's house; they both participated in taking Dailey's personal property from different areas of the house; and in Watson's presence, defendant repeatedly punched Dailey's face and stomped on her neck, twisted Dailey's neck with his hands, bound her hands with a scarf, and exhibited to Watson a knife before returning to Dailey's bedroom. Watson also testified that in December 2012, the

14

prosecution agreed to dismiss a felony-murder charge against her if she pleaded guilty of second-degree murder, larceny in a building, and unlawful possession of a financial transaction device. Watson affirmed that if she "fulfill[ed] certain conditions ... [she would] serve a minimum of twenty-three years[.]"

The trial court gave instructions that closely mirrored standard accomplice instructions CJI2d 5.4 and CJI2d 5.6. Defendant nonetheless complains that the instructions as given contained language regarding Watson's plea agreement premised on her truthful testimony (which language also appears in CJI2d 5.4), improperly bolstering Watson's credibility.

However, the instructions did not state or suggest that Watson had offered truthful testimony, but only that the prosecution had agreed to pursue a lesser charge against Watson if she offered truthful testimony and that the prosecution remained free to alter the plea agreement if it obtained additional evidence against Watson. Furthermore, the entirety of the instructions mirroring CJI2d 5.4 and CJI2d 5.6 plainly cautioned the jury about accepting Watson's testimony for multiple reasons. Moreover, the trial court informed the jury on three occasions that it had the sole responsibility to assess credibility. In light of Watson's testimony establishing her longtime use of cocaine and heroin and her offering of a statement to the police, the trial court additionally gave an addict-informer instruction, CJI2d 5.7,  which provided additional cautions to the jury regarding judging Watson's credibility. Finally, the trial court instructed the jury that it should consider her agreement to testify in exchange for the prosecution's dismissal of a charge involving "a possible penalty of life without parole" "as it relates to [her] credibility and as it may tend to show [her] bias or self-interest."

We find no error in the trial court's use of an instruction modeled on CJI2d 5.4. *People v. Jensen,* 162 Mich.App.

> 171, 187–188, 412 N.W.2d 681 (1987) (explaining that in
> light of a witness's "admissions and his guilty plea to a
> reduced charge arising from the incident, his status as an
> accomplice was beyond dispute" and that the court should
> have instructed the jury pursuant to CJI2d 5.4). And
> because the trial court correctly and accurately conveyed
> to the jury the contents of CJI2d 5.4 and CJI2d 5.6, defense
> counsel need not have objected to the proper jury
> instructions. *Thomas,* 260 Mich.App. at 457, 678 N.W.2d
> 631.

*Wood*, 862 N.W.2d at 26-28.

Wood has not shown that the Michigan Court of Appeals' decision was contrary to, or an unreasonable application of, clearly established federal law. A habeas petitioner is entitled to relief only if a defective jury instruction "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). That standard was not met here. Indeed, contrary to Wood's claim, the trial court did not instruct the jury to find Watson credible. (*See* ECF No. 9-14, PageID.789-790.) Nor did the trial court direct the jury to make specific findings of fact. Instead, the trial court informed the jury only of the common circumstances that may affect the credibility of a witness who testifies under an agreement with the prosecution. Simply put, the trial court never told the jury whether to accept or reject any or all of Watson's testimony. Under these circumstances, Wood has failed to show that the Michigan Court of Appeals unreasonably rejected this claim. Wood is therefore not entitled to federal habeas relief on this claim.

**E**

Wood next claims that the prosecutor suppressed evidence that DNA found at

the crime scene was tested against two other known individuals.  Wood raised this

claim on direct appeal, and the Michigan Court of Appeals rejected it:

> Next, defendant argues in his Standard 4 brief that the
> prosecution suppressed exculpatory evidence in the form
> of DNA tests, conducted seven months after the offense
> was committed, on Jonathan Baker and DeJuan Crawford.
> We disagree. This issue was not raised at trial and is
> therefore unpreserved and must be reviewed for plain error
> affecting substantial rights. *Carines*, 460 Mich. at 763–
> 764, 774, 597 N.W.2d 130.
>
> "Due process requires the prosecution to disclose evidence
> in its possession that is exculpatory and material,
> regardless of whether the defendant requests the
> disclosure." *People v. Schumacher*, 276 Mich.App. 165,
> 176, 740 N.W.2d 534 (2007), *citing Brady v. Maryland*,
> 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). To
> establish a Brady violation, a defendant must prove
>
>> (1) that the state possessed evidence favorable to the
>> defendant; (2) that the defendant did not possess the
>> evidence nor could the defendant have obtained it
>> with any reasonable diligence; (3) that the
>> prosecution suppressed the favorable evidence; and
>> (4) that had the evidence been disclosed to the
>> defense, a reasonable probability exists that the
>> outcome of the proceedings would have been
>> different. [*Schumacher*, 276 Mich.App. at 177, 740
>> N.W.2d 534 (quotation marks and citation
>> omitted).]
>
> Defendant attaches as Exhibit 1 to his Standard 4 brief a
> June 2012 "DNA Extraction Worksheet," which lists
> many items that Altesleben extracted DNA from in this

17

case, including a "[k]nown buccal [swab] from DeJuan
Crawford" and "[k]nown blood from Jonathan Baker."
But defendant identifies nothing tending to establish that
this evidence was favorable to him, that he could not have
possessed it with reasonable diligence, that the
prosecution suppressed it, or that a reasonable probability
existed that the disclosure of the evidence might have
altered the outcome of his trial. *Id*. In short, defendant has
utterly failed to support his claim that the prosecution
suppressed exculpatory evidence.

*Wood*, 862 N.W.2d at 29-30.

Wood has failed to show that the Michigan Court of Appeals' decision was

contrary to, or an unreasonable application of, clearly established federal law.  This

claim arises under the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83

(1963).  "There are three components to a *Brady* violation: The evidence at issue

must be favorable to the accused, either because it is exculpatory, or because it is

impeaching; that evidence must have been suppressed by the State, either willfully

or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S.

263, 281-82 (1999). Evidence is material only if there is a reasonable probability

that, had the evidence been disclosed to the defense, the result of the proceeding

would have been different. *See id*. at 280.  Here, the undisclosed evidence – if

Wood's allegations are accepted as true – amounts to the fact that DNA evidence

obtained from the scene of the crime was compared to two known men. But Wood

has not shown that the DNA from either of those men actually matched the DNA

taken from the crime scene.  Wood has therefore failed to show that this evidence

was exculpatory in any way.  He therefore is not entitled to federal habeas relief on this claim.

**F**

Wood next claims that the state trial court should have suppressed Watson's statement to police because either (1) the police violated Watson's Fourth Amendment rights before she made that statement, or (2) it was involuntarily given due to Watson's intoxication.  Watson raised this claim on direct review, and the Michigan Court of Appeals rejected it for lack of standing:

> Finally, defendant argues in his Standard 4 brief that the admission of Watson's statement to the Royal Oak police violated his constitutional rights [....] We disagree. Defendant's argument is partially premised on his claim that the police violated Watson's right to protection from unreasonable searches and seizures in obtaining her statement; however, defendant has no standing to challenge a violation of Watson's Fourth Amendment rights. *People v. Gadomski,* 274 Mich.App. 174, 178, 731 N.W.2d 466 (2007).

*Wood*, 862 N.W.2d at 31-32.

Watson has failed to show that the Michigan Court of Appeals' conclusion was contrary to, or an unreasonable application of, clearly established federal law. A plaintiff must "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). *See also Newsom v Norris*, 888 F.2d 371, 381 (6th Cir. 1989). Furthermore, to the extent that Watson's drug use at the time of the offense and her

19

statement affected her credibility, Wood's counsel fully explored those issues during his cross-examination of Watson. (*See* ECF No. 9-12, PageID.726-727, 729-730, 732.)  Wood is therefore not entitled to federal habeas relief on this claim.

## G

The remainder of Wood's claims were presented to the state courts in his motion for relief from judgment and the appeal that followed its denial. Respondent argues that review of these claims is procedurally barred because the state trial court denied relief based on Michigan Court Rule 6.508(D)(3).  That rule prohibits a defendant from raising claims on state collateral review that were not raised on direct appeal absent a showing of "good cause" and "actual prejudice."

Claims that were rejected by a state court on independent state procedural grounds are barred from federal habeas review absent a showing of cause to excuse the failure to comply with the rule and prejudice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In this case, the Oakland County Circuit Court denied Wood relief on these claims because Wood failed to demonstrate good cause or actual prejudice resulting from the failure to raise the claims on direct appeal as required by Rule 6.508(D)(3)(b).[2] (*See* ECF No. 9-20, PageID.1522.)  Because the trial court

---

[2] When reviewing a habeas claim, a federal court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).  Here, the state appellate courts' orders denying Wood relief on these claims are unexplained.  Thus,

denied Wood's claims based on the procedural grounds stated in Michigan Court Rule 6.508(D)(3), Wood's claims are procedurally defaulted pursuant to that rule. See *Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007).

To demonstrate entitlement to habeas review of the defaulted claims, Wood must establish either (1) cause for the default and prejudice from the alleged constitutional violation, or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Wood insists that his appellate attorney's ineffectiveness excuses his default. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) (ineffective assistance of appellate counsel may constitute cause excusing a procedural default). However, an attorney is not required "to raise every non-frivolous issue on appeal." *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003). Indeed, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). A failure to raise a claim on appeal will generally constitute deficient performance if the omitted claim is "clearly stronger" than the claims raised. *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

---

the Court looks to the state trial court's order denying Wood's motion for relief from judgment as the last reasoned decision when analyzing this claim.

Here, Wood has failed to show that the omitted claims are "clearly stronger" than the ones raised by his two appellate attorneys. The state trial court explained why the omitted claims lacked merit in the context of determining whether Wood could demonstrate "actual prejudice":

> Defendant first argues that his Fourth Amendment rights were violated when the Royal Oak Police seized him from the custody of the Canton Police without an arrest warrant, and then illegally transported him to Royal Oak. Defendant cites no legal authority to support his position. Furthermore, Defendant was properly arrested by the Royal Oak Police without a warrant pursuant to MCL 764.2a and MCL 764.15. Because Defendant has shown no error, he cannot meet the "actual prejudice" standard set forth in MCR 6.508(D)(3)(b).
>
> Defendant next argues that his right to due process was violated because he was held in custody for ten days without being arraigned. An arrested person must be arraigned in the district court "without unnecessary delay." MCL 764.26; MCR 6.104(A). While there are few facts in the record regarding Defendant's arrest, it appears that he was arrested and detained on November 22, 2011, on the basis of a parole violation. An arrest warrant for the charges in this case was issued on December 13, 2011, the same day that Defendant was arraigned in the district court on those charges. Therefore, Defendant has not shown that his arraignment on the charges in this case was untimely. Because Defendant has shown no error, he cannot meet the "actual prejudice" requirement. MCR 6.508(D)(3)(b).
>
> Defendant next argues that he was denied due process, and that the Court lacked jurisdiction over him, because the arrest warrant and complaint were not filed with the Court. The record reflects that the arrest warrant and complaint were filed in this Court on April 2, 2012. Again, Defendant

has shown no error and, therefore, cannot meet the "actual prejudice" standard.

Defendant next argues that his right to a speedy trial was violated because there was a thirteen-month delay between his arrest and trial. Whether a Defendant has been denied the right to a speedy trial depends on the balancing of four factors: (1) the length of delay, (2) the reason for delay, (3) the Defendant's assertion of the right, and (4) prejudice to the Defendant. *People v. Williams*, 475 Mich. 245, 261-262 (2006). Because the delay between Defendant's arrest and trial was less than eighteen months, prejudice is not presumed. Id at 262. Defendant has not shown that he was denied his right to a speedy trial where he has not shown, or even argued, that he was prejudiced by the delay. Accordingly, Defendant has not met the "actual prejudice" standard set forth in MCR 6.508(D)(3)(b).

Defendant next argues that he was denied the effective assistance of counsel because defense counsel failed to investigate prosecution witness Tonia Watson to determine that she had sixteen prior convictions. Defendant appears to argue that, had Watson's credibility been impeached with evidence of her prior convictions, he would have had a reasonably likely chance of acquittal. Under MRE 609, a prior conviction generally may be used to impeach a witness' credibility if the prior conviction involved an element of theft or dishonesty. *People v. Snyder* (After Remand), 301 Mich. App. 99, 105-106 (2013). Contrary to Defendant's argument, the record shows that Tonia Watson's credibility was impeached at trial with her prior theft convictions. On direct examination, Watson admitted that she had been convicted of six theft offenses. On cross-examination, Watson again acknowledged prior theft offenses. During closing arguments, defense counsel effectively questioned Watson's credibility on the basis of her prior theft convictions, as well as her drug use. Accordingly, Defendant's argument that defense counsel was not aware of Tonia Watson's prior convictions is not supported by

the record. Accordingly, Defendant has not shown "actual prejudice" from the alleged error. MCR 6.508(D)(3)(b).

Defendant next argues that prosecutorial misconduct denied him a fair trial. While Defendant argues that "[t]he record is replete with instances where [the prosecutor] flagrantly violated the ruling of the [C]ourt such as testifying in the guise of examination creating prejudice to persuade the jury to convict the Defendant on the basis of character," he does not point to any specific instances of misconduct in the transcript. Furthermore, the jury was instructed that it should decide the case on the basis of the evidence, and that the lawyers' statements, questions and arguments are not evidence. Jurors are presumed to follow the Court's instructions. *People v. Graves*, 458 Mich. 476, 486 (1998). Defendant has not shown "actual prejudice" with respect to this issue. MCR 6.508(D)(3)(b).

Defendant next argues that there "was no real physical evidence ever shown" at his trial, and that he is actually innocent. The record does not support Defendant's argument. There was evidence that Y-STR DNA matching Defendant's DNA sample was found under the victim's fingernails and on the scarf used to tie up the victim. Furthermore, there was substantial, nonphysical, evidence connecting Defendant to the crime. In addition to the circumstantial evidence of Defendant's guilt, Tonia Watson's testimony detailing Defendant's perpetration of the crime provided direct evidence of his guilt. Defendant has not shown that he is entitled to relief on the basis of this issue.

Defendant next argues that his right to a fair trial was violated because the trial judge did not disqualify herself when Defendant asked for a directed verdict. Defendant cites *People v. Hale*, 72 Mich. App. 484 (1976), in which the Court held that a trial judge should have been disqualified from hearing a motion for a new trial where the judge had knowledge that a witness for the prosecution had passed a polygraph test. Here, there was no indication

24

in the record that Defendant took a polygraph examination. Defendant has provided no legal or factual support for his argument that the trial judge should have been disqualified merely because Defendant moved for a directed verdict. Defendant has not shown that he is entitled to relief with respect to this issue. MCR 6.508(D)(J)(b).

Finally, Defendant argues that he was denied an impartial judge because the trial judge "was running campaign ads on television saying how tough she is on criminals who commit (sic) crimes against women, children, and the elderly. Then used the Defendant's high profile trial as a platform for aspirations of a higher court position." Defendant has submitted no evidence to support his argument, nor has he cited any specific instances in which he believes the trial judge exhibited bias. Accordingly, Defendant has not met the "actual prejudice" standard. MCR 6.508(D)(3)(b).

(ECF No. 9-20, PageID.1519-1522.)

As the trial court's discussion demonstrates, the omitted claims were not "clearly stronger" than those raised on appeal by Wood's two appellate attorneys. Indeed, the Michigan Court of Appeals deemed those issues worthy of careful analysis in a published opinion.  Under these circumstances, Wood has failed to establish that his appellate attorneys rendered ineffective assistance during his direct appeal, and he therefore fails to demonstrate cause to excuse his procedural default

of failing to raise these claims on direct review.  Thus, Wood's remaining habeas claims (claims eleven through twenty) are procedurally defaulted.[3]

As none of Wood's claims merit relief, the Court will **DENY** the petition **WITH PREJUDICE**.

## IV

In order to appeal the Court's decision, Wood must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *See Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason would not debate the Court's conclusion that Wood has failed to demonstrate entitlement to habeas relief with respect to his habeas claims. Therefore, a certificate of appealability will be denied.

---

[3] Nor has Wood shown that he can avoid a procedural default under the fundamental miscarriage of justice exception by showing that he is actually innocent. *See House v. Bell*, 547 U.S. 518, 536 (2006).  Wood has not presented any new reliable evidence to support an actual innocence claim.

The Court will also deny Wood leave to appeal *in forma pauperis* because an appeal of this decision could not be taken in good faith. *See* 28 U.S.C. § 1915(a)(3).

**V**

Accordingly, for all of the reasons stated above, the Court 1) **DENIES WITH PREJUDICE** Wood's petition for a writ of habeas corpus (ECF No. 1), 2) **DENIES** Wood a certificate of appealability, and 3) **DENIES** Wood leave to appeal *in forma pauperis.*

**IT SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  August 3, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 3, 2020, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764

27